IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Dean Joseph Woodburn, | ) | |
| Petitioner, | ) | |
| v. | ) | CIV 01-2525 PHX NVW (VAM) |
| Dora B. Schriro, et al., | ) | REPORT AND RECOMMENDATION |
| Respondents. | ) | |

TO THE HONORABLE NEIL V. WAKE, U.S. DISTRICT JUDGE.

Dean Joseph Woodburn ("petitioner") filed a pro se Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner raises two grounds for relief in the amended petition. (Doc. 11 at pp. 5-6). Respondents filed an answer seeking denial based on the statute of limitations. (Doc. 24). Petitioner filed a reply to the answer. (Doc. 28).

**I. BACKGROUND**

On July 16, 1998, petitioner signed a plea agreement pleading guilty to one count of attempted aggravated assault. (Doc. 24, Exhibit A at p. 1). The agreement informed petitioner he was subject to a maximum prison sentence of 13 years if adjudged guilty of this crime "if the trial court makes [an] exceptional circumstances finding." (Id.). On September 23, 1998, the state trial court sentenced him to the maximum term of 13 years. (Id., Exhibit B).

1    Petitioner filed a petition for post-conviction review
2   pursuant to Ariz.R.Crim.P. 32.1 and the trial court denied the
3   petition.  (Doc. 11 at p. 2; <u>see also</u> Doc. 24, Exhibit C).
4   Although no copy of petitioner's actual petitions for review are
5   included in the record, the Arizona Court of Appeals summarily
6   denied review on May 23, 2000, and the Arizona Supreme Court
7   denied review without comment on December 5, 2000.  (<u>See</u> Doc. 11
8   at Attachments).  Petitioner states he sought no further review
9   in state court, and, although no copy is in the record, further
10  states that the Arizona Court of Appeals issued its mandate on
11  December 15, 2000.  (Doc. 11 at p. 2).  There is no mandate
12  issued after a Rule 32 is denied.  The issuance of a mandate
13  occurs only on direct appeal.  Ariz.R.Crim.P. 31.23(a)(1) and
14  (3).  As a result, petitioner's state court proceedings ended
15  December 5, 2000.

16    On December 26, 2001, petitioner filed a "Motion for
17  Extension of Time 180 Days Filing a Federal Habeas Corpus." No
18  petition was attached to the Motion.[1] (Doc. 1).  On January 11,
19  2002, this Court denied the request for a 180-day extension to
20  file a habeas petition, but granted him an additional 30 days to
21  file an "amended petition on the court-approved form ..."  (Doc.
22  3 at p. 2).

23    Petitioner filed a new motion seeking a 180-day extension to
24  file the petition on February 19, 2002.  (Doc. 4).  On May 23,
25  2002, the Court again denied the request for a 180-day extension

26  _____

27      [1]The docket sheet incorrectly lists Document 1 as a Petition
    for Writ of Habeas Corpus.

28                                    2

and noted petitioner had not paid his $5.00 filing fee.  The
Court again granted petitioner an additional 30 days to file an
"amended petition" on the Court-approved form and to pay the
filing fee or file an Application to Proceed In Forma Pauperis.
(Doc. 7 at pp. 1-2).  On June 24, 2002, petitioner filed a third
motion for an extension of time for an additional 180 days to
file an amended habeas petition along with a Motion to Proceed In
Forma Pauperis.  (Docs. 8, 9).  On October 23, 2002, the Court
granted the Motion to Proceed In Forma Pauperis, and granted
petitioner an additional 30 days to file an amended habeas
petition.  (Doc. 10 at p. 1).

Finally, on November 25, 2002 (the amended petition was
actually signed by petitioner on November 21, 2002), petitioner
filed his habeas petition raising the following grounds for
relief:

> **GROUND I:** SIXTH AND FOURTEENTH AMENDMENTS, EFFECTIVE
> ASSISTANCE WITH DUE PROCESS.  COUNSEL FAILED TO REQUEST
> COMPETENCY AND MITIGATION HEARINGS ....

> **GROUND II:** FIFTH AND FOURTEENTH AMENDMENT, RIGHT TO DUE
> PROCESS.  PETITIONER'S GUILTY PLEA ... WAS NOT KNOWING
> AND VOLUNTARY ....

(Doc. 11 at pp. 5-6).  Respondents opposed the "amended petition"
contending the claims were barred by the one-year statute of
limitations found at 28 U.S.C. § 2244(d).  (Doc. 24).

The Magistrate Judge issued a Report and Recommendation
recommending that the amended petition be denied as untimely.
(Doc. 40).  The District Court agreed and denied the amended
petition.  (Doc. 44).  The District Court also denied a
Certificate of Appealability.  (Doc. 50).  An appeal went forward

3

and apparently petitioner argued, for the first time, he was
entitled to equitable tolling because he was not mentally
competent.  The Ninth Circuit Court of Appeals vacated and
remanded to the District Court for further factual development of
petitioner's mental incompetence claim as it related to equitable
tolling. (Doc. 57).  Upon remand, the District Court referred
this matter back to the Magistrate Judge "for further development
of Petitioner's mental incompetence claim . . ."  (Doc. 58).

Following referral, the Magistrate Judge ordered further
briefing ". . .to determine if an evidentiary hearing (including
appointment of counsel) [which is now moot] is warranted with
respect to the issue of equitable tolling."  The Court ordered an
evidentiary hearing to address petitioner's new claim that he was
not mentally competent from December 5, 2000 to December 26, 2001
and, at the same time, to address his claim (raised on the
merits) of mental competence at the change of plea hearing.  The
later issue was allowed to save time in the event the Court
should find equitable tolling and address the merits.  The
evidentiary hearing took place on September 27, 2006.  Petitioner
testified and Exhibits 1-5 were admitted in evidence.
Respondents called no witnesses and exhibits 16-42 were admitted
in evidence.

**II. DISCUSSION**

**A. Issue of Remand**

The issue on remand is a narrow one, namely, whether
petitioner was mentally incompetent during the period the statute
of limitations ran (between December 5, 2000 and December 26,

4

1   2001) and whether he is entitled to equitable tolling of the

2   statute as a result.  (See Doc. 57 at p. 3).  In remanding on

3   this issue, the Ninth Circuit Court of Appeals stated:

4           Under Laws v. Lamarque, 351 F.3d 919 (9th Cir.
        2003), a habeas petitioner is entitled to a remand for
5       further factual development of his claim of equitable
        tolling due to mental incompetence whenever the
6       petitioner alleges "in a sworn pleading, against which
        the state has offered no evidence at all, that he was
7       incompetent in the years when his petitions should have
        been filed."  Laws, 351 F.3d at 923.  Woodburn has made
8       such an allegation.  Accordingly, the district court's
        denial of Woodburn's habeas corpus petition for
9       untimeliness is VACATED AND REMANDED for further
        factual development of his mental competence.

10  (Doc. 57 at p. 3).

11  **B. Statute of Limitations**

12      As part of the Anti-Terrorism and Effective Death Penalty

13  Act of 1996 ("AEDPA"), Congress provided a 1-year statute of

14  limitations for all applications for writs of habeas corpus filed

15  pursuant to 28 U.S.C. § 2254, challenging convictions and

16  sentences rendered by state courts.  This provision, codified at

17  28 U.S.C. § 2244, states, in pertinent part:

18      (d)(1) A 1-year period of limitations shall apply to an
19      application for a writ of habeas corpus by a person in
        custody pursuant to the judgment of a State court.  The
20      limitation period shall run from the latest of --

21      (A) the date on which the judgment became final by the
        conclusion of direct review or the expiration of time
22      for seeking such review;

23      (B) the date on which the impediment to filing an
        application created by State action in violation of the
24      Constitution or laws of the United States is removed,
        if the applicant was prevented from filing by such
25      State action;

26      (C) the date on which the constitutional right asserted
        was initially recognized by the Supreme Court, if the
27      right has been newly recognized by the Supreme Court

28                          5

and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

In Calderon v. United States District Court for the Northern District of California ("Beeler")(en banc), 128 F.3d 1283 (9th Cir. 1997), the Ninth Circuit addressed the new limitations period contained at 28 U.S.C. § 2244(d)(1).  The Court noted that prior to § 2244(d)'s enactment "state prisoners had almost unfettered discretion in deciding when to file a federal habeas petition" and that "delays of more than a decade did not necessarily bar a prisoner from seeking relief."  Beeler, 128 F.3d at 1286.

The Court noted, however, that the provisions of § 2244(d) "dramatically changed this landscape" and a petitioner was now "required to file his habeas petition within one year of the date his process of direct review came to an end."  Id.   The Beeler Court held § 2244(d) established a customary statute of limitations period "subject to equitable tolling."  Id. at 1288-89.  The statute itself provided for tolling the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  However, the Court cautioned that equitable tolling of the limitations period "will not be available in most cases but will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on

1  time." Beeler, 128 F.3d at 1288-89 (citing Alvarez-Machain v.

2  United States, 107 F.3d 696, 701 (3rd Cir. 1997)).  Mental

3  incompetency justifies tolling of the statute of limitations.

4  Laws v. LaMarque, 351 F.3d 919, 923 (9th Cir. 2003).  Petitioner

5  has the burden of proving mental incompetence warranting

6  equitable tolling. Id.; Mendoza v. Carey, 449 F.3d 1065, 1068

7  (9th Cir. 2006).

8      The Court has not found a case setting forth the burden of

9  proof standard so preponderance of the evidence standard has been

10  used by the Magistrate Judge.[2]

11      **C. Petitioner's Claim for Equitable Tolling**

12      During the evidentiary hearing (and in his filings),

13  petitioner took the position he has not been mentally competent

14  at any time over the last 9 years of incarceration.  However, he

15  testified at the evidentiary hearing and he appeared to be

16  competent during his testimony.  He was appropriate in Court, he

17  demonstrated a recollection of events, he answered questions

18  appropriately on direct examination but was evasive on cross-

19  examination and lacked credibility.  The State asked for a

20  competency ruling after direct exam and the Court found

21  petitioner to be competent.  Petitioner testified he has been off

22  all psychotropic medications for the past 6-8 months because he

23  is being treated for Hepatitis C and, due to drug interactions,

24

25  [2]Of course, petitioner's burden of proof would be quite
   different on the substantive issue of whether he was competent at
26  the change of plea.  Since the state trial court made a factual
   finding of competence (affirmed by the Arizona appellate courts),
27  petitioner would have the burden of proving by clear and convincing
   evidence that he was not competent. 28 U.S.C. § 2254(e)(1).

28                                   7

1    he had to choose one treatment or the other.  He chose to be

2    treated for liver disease and give up psychotropic medications.

3    Despite this, he appeared to be competent.

4        To support his assertion of mental incompetence from

5    December, 2000 to December, 2001, petitioner relies on letters

6    written by Dr. Thomas N. Thomas, M.D.  (Exhibits 1 and 2).  The

7    first letter is from December 2, 1994, and the second is dated

8    January 26, 1997.

9        In the first letter, written in 1994 to petitioner's public

10   defender (in a criminal proceeding not at issue in this habeas),

11   Dr. Thomas states he reviewed "most of the documents involved in

12   the case" and also went to see petitioner.  Dr. Thomas opined

13   that petitioner exhibits many of the hallmarks of bi-polar

14   disorder and concluded he "is not, in my opinion, fully capable

15   of assisting you in a rational and factual manner.  I believe he

16   is still in the throws of an inadequately treated manic state."

17   Dr. Thomas went on to state that once the prescribed medications

18   take hold, "[m]y anticipation is that he will be able to respond

19   more fully and may well improve."  (Exhibit 1).  The letter

20   explains that, according to Mr. Woodburn, while out of custody he

21   was off his medications and became manic.  Dr. Thomas recommended

22   he continue with his treatment by Correctional Health Services

23   staff "which is quite competent."  Id.

24       Similarly, in a January 26, 1997 letter to another attorney,

25   (also representing petitioner in an unrelated criminal matter),

26   Dr. Thomas stated he again saw petitioner and determined "he has

27   suffered a relapse of the bipolar illness which I had previously

28                                8

diagnosed."   (Exhibit 2).  Dr. Thomas noted that petitioner told him "he had been off his medicine and had relapsed into his methamphetamine abuse."  (Id.).  Dr. Thomas stated petitioner's competence may fail when he decompensates and becomes "manic." Dr. Thomas also noted in the letter that petitioner was put back on medication in the 10 days prior to their meeting (after he was re-incarcerated).  Dr. Thomas observed "encouraging improvement" in petitioner's condition after he was re-medicated, noting petitioner told him he was no longer suicidal and that he was feeling much better.  However, Dr. Thomas stated petitioner was not yet "competent to assist you in his own defense. . .Happily as has happened in the past, I expect him to improve further on his present treatment.  I don't anticipate it will take a very long time, perhaps a few weeks."  Id.

Petitioner's Exhibit 3 is a presentence report which details 6 prior felony convictions which are similar to the conviction which is the subject of this habeas.  The presentence report recommends a sentence of 13 years.  (Exhibit 3).  Petitioner received a sentence of 13 years.

Petitioner also relies on an affidavit he executed in June, 2004, in support of a request for appointment of counsel in this habeas proceeding.  (Exhibit 4).  In this affidavit, petitioner discusses the findings of Dr. Thomas.  In addition, petitioner states he has been in several programs while in prison but that in his latest place of incarceration "I don't get any type of mental health help. . ."  Petitioner further states in the affidavit, however, that he has been given medications on an

9

ongoing basis to aid with his bi-polar disorder and epilepsy.
(Exhibit 4).

In Exhibit 5, petitioner directed the Court's attention to
an Inmate Letter dated August 26, 2004 where petitioner wrote:
"Please-send me to M.T.V. so I can get some Professional Mental
Health-Help 'Right Away.'" (Exhibit 5 at p. 7).  The letter
appears to be about a physical injury and resulting pain
(physical and mental) for which petitioner wants ". . . to be
fully compensated."  Id.

In contrast, respondents assert petitioner failed to support
a claim he was mentally incompetent during any time between
December, 2000 through December, 2001.  Respondents' counsel
cross-examined petitioner and Exhibits 16-42 were admitted.  The
Court also took judicial notice of documents in a prior habeas
corpus proceeding in this Court (CIV 00-1656) and a prior civil
suit (CIV 98-1734).

The record from the previous habeas petition, Woodburn I,
CIV 00-1656 (challenging a different 1997 conviction), shows that
at two separate hearings during March and April, 1997, the trial
court considered whether there was a sufficient basis warranting
a full competency evaluation of petitioner under Arizona law.
(Woodburn I, Doc. 9A at Exhibits B and C).  The record indicates
that at the first hearing in March, 1997, Dr. Thomas testified.
Afterward, the Court ordered a "prescreening" evaluation which
was completed by Dr. Potts (a psychiatrist) and the court
determined the facts did not warrant granting a motion for a full
competency evaluation under Ariz.R.Crim.P. 11.  Dr. Potts found

10

petitioner competent at the time of his examination.  Petitioner testified that Dr. Potts saw him after Dr. Thomas concluded petitioner needed additional time on medications to regain competency.  (Exhibits 18, 19, 20, 21 at p. 2).  Petitioner testified in the evidentiary hearing, before this Court, that Dr. Potts spent two minutes with him in the evaluation.  Petitioner was very defensive and not credible on this point.

In June, 1998, in this same unrelated case (CR 97-90286), petitioner's counsel moved to continue the sentencing and asked the Court for another mental health evaluation.  (Exhibit 22). The Court granted the motion.  (Exhibit 23).  The record does not include the result.  However, petitioner's counsel in a sentencing memorandum (August 24, 1998) asked for a mitigated sentence because of petitioner's bi-polar disorder.  (Exhibit 24).

From August 28, 2000 to November 14, 2002, petitioner was pursuing a habeas corpus challenging the conviction in CR 97-90286 in Maricopa County.  (Exhibit 25).  Petitioner was not represented by counsel.  The habeas corpus ended in denial of the petition.  Id.

From September 24, 1998 to January 31, 2003, petitioner (acting pro se) was pursuing a lawsuit under 42 U.S.C. § 1983. (Exhibits 31-41).  The lawsuit ended in a judgment for defendants but petitioner pursued his claims vigorously.  Id.

When questioned about these lengthy filings with many legal arguments, petitioner testified that the handwritten documents in the previous habeas and 1983 lawsuits were in his handwriting but

that someone else wrote them and he copied their work.  He also testified the typed documents were prepared by someone else and he just signed them.  However, he testified he read, signed and filed all of them.  Petitioner's testimony that he did not prepare the documents was not credible.  Many of the handwritten documents are lengthy and contain personal information that, according to his testimony, came from him.

Finally, Exhibit 42 contains petitioner's mental health records from the Arizona Department of Corrections from October 15, 1998 to February 11, 2005.  The section from December, 2000 through December, 2001 shows he was medicated, stable and oriented.  (Exhibit 42).  The records do reflect depression and sleeping problems at times but nothing that would support a finding he was not competent.  Id.  For example, following a document review, a psychologist noted a history of exaggerating mental health problems "to achieve secondary goals." (Exhibit 42 at 4/20/01).

**D.  Findings of Fact**

Based on the evidence admitted in the evidentiary hearing, the documents filed in this case and the documents in CIV 98-1734 and CIV 00-1656 of which the Court takes judicial notice, the Magistrate Judge makes the following findings of fact:

1.  From September 24, 1998 to January 31, 2003, petitioner was actively litigating a conditions of confinement (42 U.S.C. § 1983) lawsuit (CIV 98-1734) in this Court.  During December, 2000 - December, 2001, he was writing, signing and filing documents that contained lucid legal arguments and factual

presentations.

2.   From August 28, 2000 to November 14, 2002, petitioner was actively pursuing a habeas corpus action challenging his conviction in state case CR 97-90286, an unrelated case.  In that case, petitioner filed documents and argued legal positions that demonstrated he was competent during the litigation.

3.   Petitioner's testimony at the hearing was not credible when he testified that he copied others legal work and did not write the documents he signed in CIV 98-1734 and CIV 00-1656.

4.   Petitioner's testimony in CR 97-90286 that Dr. Potts' competency examination lasted two minutes was not credible.

5.   Petitioner's testimony that he did not write the affidavit found at Exhibit 4, Doc. 47, is not credible.  The affidavit itself demonstrates he wrote it: "Please bear with me, I am trying my best in writing this affidavit."  It is signed by petitioner and sworn as true before a notary.

6.   Petitioner's testimony that he has been incompetent since his sentence began 9 years ago is not credible.

7.   Petitioner's medical records, December, 2000 - 2001, show petitioner was medicated, going to therapy and receiving regular examinations where he was found to be without psychotic features, stable and oriented.

8.   When petitioner uses methamphetamine, he relapses into mental illness.

9.   Petitioner has had no illegal drugs while incarcerated over the last 9 years.

10.   Petitioner was not truthful with this Court when he

13

claimed initially that he was not aware of the one-year statute
of limitations.  In Doc. 19 in CV 00-1656, petitioner attached a
letter to his filing where an attorney advised petitioner in
July, 2001 that there is a one-year statute of limitations in
habeas cases and ". . . if your Rule 32 and any related appeals
are over, you have, at most, one year from the date the
proceedings ended to file your federal habeas corpus. . . " (Doc.
19 in CV 00-1656).  Petitioner told this Court he missed the one-
year statute of limitations because he was not aware of it and
the libraries did not contain the statute.  (Doc. 28 at pp. 5-6).
Respondents then provided evidence that petitioner's statement
was not correct.  (Doc. 35).

  **E.  Conclusions**

  The evidence presented by petitioner is insufficient to
warrant equitable tolling.  The mere fact petitioner is bi-polar
is not enough to establish lack of competence.  See Gaston v.
Palmer, 417 F.3d 1030, 1034-35 (9th Cir. 2005) (no equitable
tolling based on physical or mental disabilities as petitioner
was able to prepare and file other court documents during the
time the statute was running) revised on other grounds, 447 F.3d
1165 (9th Cir. 2006).  See also Sandgathe v. Maass, 314 F.3d 371,
378-9 (9th Cir. 2002).

  In this case, petitioner has failed to present any evidence
that his bi-polar condition rendered him mentally incompetent
during any part of the period the statute of limitations ran on
his habeas claims.  The letters by Dr. Thomas, and/or his
testimony before the state trial court in another case in 1997,

when considered with other evidence, did not convince the state trial court that a sufficient basis for a Rule 11 examination existed. (Exhibits 16-25). In fact, Dr. Thomas indicated petitioner is rendered competent when properly medicated. (Exhibit 18 at Attachment). Petitioner testified in his 2004 affidavit and at the hearing he continued to receive medications for his bi-polar condition during the relevant time frame. This is documented in his mental health records. (Exhibit 42).

In addition, the Magistrate Judge has reviewed the transcript of petitioner's change of plea hearing (regarding the conviction challenged in the current case) on July 16, 1998. Based on this review, the Magistrate Judge does not see any evidence that petitioner was not mentally competent. At the outset, the trial judge asked petitioner if he was taking any medication. Petitioner said he was and that among the drugs he was taking were Tegretol and Vistral, which he stated were specifically for his bi-polar condition. (Exhibit 16 at p. 5). Petitioner stated he did not believe any of his medication impaired his ability to understand the proceedings. Id.

Petitioner also stated, in response to a series of questions regarding the implications of his guilty plea, that he fully understood the implications, including the possible sentences he might receive, and pointedly admitted to the substance of the crime, namely, that he knowingly attempted to assault a police officer by driving a car at him. Review of the transcript of the change of plea hearing reveals petitioner wrote a "poem" that raised concerns that he might be suicidal but petitioner assured

the court he was not.  The trial court determined the plea was knowing, intelligent and voluntary and this is supported by the record.  The plea hearing occurred on July 16, 1998, a time subsequent to Dr. Thomas' letters, when petitioner was medicated.  Contrary to petitioner's assertions, there is nothing from the change of plea transcript in this case to indicate he was not competent.

As noted in <u>State v. Harding</u>, 137 Ariz. 278, 286, 670 P.2d 383, 391 (Ariz. 1983), a trial court, in determining a defendant's mental competency need "not only rely ... on the psychiatrists' opinions, but it also observed the defendant's demeanor and heard his responses to inquiries ..."  The trial court had the ability to observe petitioner's demeanor and the quality of his answers at the change of plea.  When petitioner raised his competence at the change of plea in a Rule 32 petition, the Judge who took his change of plea also considered and denied his Rule 32 petition finding that he was competent.

Finally, the Court notes that during the entire time the statue of limitations was running in this case, and petitioner contends his bi-polar rendered him incompetent, petitioner was actively litigating a <u>pro se</u> habeas case challenging a different conviction in <u>Woodburn I</u>, CIV 00-1656 PHX MHM (VAM) and a civil rights case in this Court in <u>Woodburn v. Himmelberger</u>, CIV 00-1734.  Petitioner filed numerous papers and coherently and forcefully argued his position in both cases.  This belies any claim of incompetence, particularly incompetence preventing him

1  from filing a timely petition in the current case.[3]

2      In sum, petitioner has not carried his burden of proof and
3  demonstrated that he was not competent during the time the
4  statute of limitations was running.  Upon review of all the facts
5  in the record, the testimony at the evidentiary hearing and the
6  exhibits in evidence, the Magistrate Judge finds petitioner was
7  competent during the time the statute of limitations ran and he
8  is not entitled to equitable tolling.

9      **IT IS THEREFORE RECOMMENDED** that the Petition for Writ of
10 Habeas Corpus be denied as untimely.

11      This Report and Recommendation is not an order that is
12 immediately appealable to the Ninth Circuit Court of Appeals.
13 Any notice of appeal filed pursuant to Rule 4(a)(1), Federal
14 Rules of Appellate Procedure, should not be filed until entry of
15 the district court's order and judgment.  The parties shall have
16 ten (10) days from the date of service of this Report and
17 Recommendation within which to file specific written objections
18 with the Court.  Thereafter, the parties have ten (10) days
19 within which to file a response to the objections.  Failure
20 timely to file objections to any factual determinations of the
21 Magistrate Judge will be considered a waiver of a party's right
22 to de novo consideration of the factual issues and will
23 constitute a waiver of a party's right to appellate review of the

24 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

25      [3]The Court also notes that when petitioner filed in this
   Court, it appears he realized he was beyond the statute of
26 limitations.  (Doc. 1).  Instead of filing a habeas petition, he
   filed a Motion for additional time to file and made excuses as to
27 why he did not file earlier.

28                                 17

findings of fact in an order or judgment entered pursuant to the
Magistrate Judge's Report and Recommendation.

DATED this 11th day of October, 2006.

_Virginia A. Mathis_

Virginia A. Mathis
United States Magistrate Judge

18